**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | | |
|---|---|---|
| GLORIA GREEN, | ) | |
| | ) | No. 5:20-cv-0085-DCN-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ANDREW SAUL, Acting Commissioner | ) | |
| of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Kaymani D. West's report and recommendation ("R&R") that the court affirm Acting Commissioner of Social Security Andrew Saul's ("Commissioner") decision denying claimant Gloria Green's ("Green") application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the court adopts the R&R and affirms the decision of the Commissioner.

## I.  BACKGROUND

### A.  Procedural History

Green filed an application for DIB and SSI on March 20, 2017, alleging a disability onset date of February 10, 2016. The Social Security Administration ("the Agency") denied Green's application initially and upon reconsideration. Green requested a hearing before an administrative law judge ("ALJ"), and ALJ Lauren Logan Benedict presided over a hearing held on April 2, 2019. In a decision issued on April 16, 2019, the

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.

ALJ determined that Green was not disabled within the meaning of the Act.  Green

requested review of the 2019 ALJ decision, and on December 16, 2019, the Appeals

Council denied Green's request for review, making the ALJ's decision the final decision

of the Commissioner.

Green filed this civil action seeking review of the ALJ's decision on January 8,

2020.  ECF. No. 1, Compl.  Pursuant to 28 U.S.C. § 636 and Local Civ. Rule

73.02(B)(2)(a)(D.S.C.), the matter was assigned to Magistrate Judge West, who issued an

R&R on December 18, 2020, recommending that this court affirm the ALJ's decision.

ECF. No. 23.  Green filed objections to the R&R on December 23, 2020, ECF No. 25,

and the Commissioner responded to the objections on January 5, 2021, ECF No. 26.  The

matter is now ripe for the court's review.

### B.  Medical History

The parties are familiar with Green's medical history, the facts of which are ably

recited by the R&R.  As such, the court dispenses with a lengthy recitation thereof and

instead briefly accounts those facts material to its review of Green's objections to the

R&R.  In 2011, Green worked for an automotive component manufacturer, assembling

car parts and lifting no more than 45-50 pounds.  Green alleges that she stopped working

on March 29, 2011 due to pain associated with her right hand, left arm, shoulder, and

neck, and has not engaged in gainful employment since that time.  Green claims that the

pain in her shoulder and neck has increased since her disability onset date and that she is

no longer able to grasp with her dominant right hand.  Further, Green alleges that she has

been diagnosed with carpal tunnel syndrome but notes that her doctor did not recommend

surgery.  Green also states that she has struggled with depression since the death of her

mother and receives treatment for her mental health, including prescription medication, from a psychiatrist.

## C. ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails

at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

      To determine whether Green was disabled at any point between her alleged onset date of February 10, 2016 and her date of last insured, December 31, 2016, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Green did not engage in substantial gainful employment during the period between her alleged onset date and date of last insured. Tr. 12. At step two, the ALJ determined that Green has the following severe impairments: degenerative disc disease of the cervical spine; cervical neuropathy; synovitis and tenosynovitis of the right hand, and right carpal tunnel syndrome. Tr. 12. At step three, the ALJ found that Green's impairments or combination thereof did meet or medically equal the severity of one of the impairments listed in the Agency's Listing of Impairments. Tr. 14. Before reaching the fourth step, the ALJ determined that Green retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(B) and 416.967(B)[,] except: pushing and pulling with the right upper extremity is limited to frequent; no ladders, rope or scaffold and no crawling; other postural activities could be performed occasionally; occasional overhead reaching with the right upper extremity; and the frequent right upper extremity handling and fingering.

Tr. 14. At the fourth step, the ALJ found that Green is capable of performing past relevant work as a parts assembler and inspector. Tr. 18. Reaching an answer that ended the inquiry at step four, the ALJ concluded the Green was not disabled under the meaning of the Act during the period at issue without reaching the fifth step. Tr. 20.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id.  (internal citations omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Id.  Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is

disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).  Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard.  Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).

### III.  DISCUSSION

Green objects to the R&R on three grounds.  First, Green argues that the R&R failed to acknowledge that the ALJ improperly weighed the opinion of Green's treating physician, Dr. Matthew Delfino.  Green's second and third objections relate to the R&R's finding that the ALJ properly assessed Green's RFC.  As a second objection, Green argues that the ALJ did not consider the combined effects of Green's impairments.  And as a third objection, Green argues that the ALJ did not properly consider her mental capabilities in her RFC.  The court addresses each objection in turn, finding each without merit.

### A.  Dr. Delfino's Medical Opinion

Green first contends that the ALJ credited the opinions of non-examining sources over the opinions of her treating medical source, Dr. Delfino, and that the R&R erred in accepting the ALJ's assessment.  The court disagrees.

Regardless of the source, an ALJ must evaluate every medical opinion a claimant provides. 20 C.F.R. § 404.1527(c). Where a claimant provides an opinion from a "treating source," the opinion is generally entitled to significant weight in the determination of disability under the treating physician rule. 20 C.F.R. § 404.1527(c)(2); see Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In fact, the regulations demand that a medical opinion from a treating source be afforded "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The Fourth Circuit has noted the treating physician rule makes good sense:

> treating physicians are given more weight ... since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[ ].

Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)) (internal quotation marks omitted).

Where an opinion is not entitled to deference under the treating physician rule, the ALJ still must apply several factors to determine the weight the opinion should be afforded. 20 C.F.R. § 404.1527(c)(2). Those factors are: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, that is, the extent to which it is

consistent with medical signs and laboratory findings, (4) the consistency of the opinions with the record and other opinions, (5) whether the physician is a specialist, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6). The ALJ must give "good reasons" in the decision for his or her assignment of weight to a treating source's opinion, 20 C.F.R. §§ 404.1527(c)(2), meaning that the decision

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P.

The Fourth Circuit does not mandate an express discussion of each factor, and this court has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he [or she] applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010). A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 624 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

The record contains the opinion of Dr. Delfino, Green's treating doctor at Regenesis Health Care, who completed a two-page medical statement regarding Green's symptoms. Tr. 388-89. Dr. Delfino opined that Green's medical conditions impair her ability to perform daily activities and/or work, that her symptoms would likely increase with physical activity, and that Green would require frequent rest periods. Tr. 388. The

ALJ accorded "little weight" to Dr. Delfino's statements "because it is inconsistent with the medical record, which largely consists of his own treatment notes." Tr. 17. The R&R determined that the ALJ was not required to give Dr Delfino's opinion controlling weight, given the presence of "persuasive contrary evidence." ECF No. 23 at 15 (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). The court agrees.

The ALJ declined to afford Dr. Delfino's opinion controlling weight, instead according it "little weight." Tr. 17. The court finds that the ALJ sufficiently explained her decision, which is supported by substantial evidence in the record. The ALJ detailed the presence of contrary evidence that justified her evaluation:

> For example, Dr. Delfino states that the claimant's alleged symptoms/restrictions are likely to increase with physical activity (Exhibit B4F, pg. 1). However, as noted above, the claimant reports that physical therapy through the YMCA and daily exercises have made her feel better. In addition, physical exams found throughout the record are largely unremarkable and do not support the level of limitation opined by Dr. Delfino.

Tr. 17. The ALJ specifically detailed her reliance on physical exams from March 2016 to February 2019, which demonstrate that Green showed "no acute distress with normal respiratory findings, normal cardiovascular findings, normal abdomen, full and symmetric muscle strength noted, normal muscle tone without any atrophy or abnormal movements. . . no deformities noted, fully oriented . . . ." Tr. 16–17. The ALJ also discussed Green's activities of daily living, which are inconsistent with Dr. Delfino's opinions. After considering the contrary evidence, the ALJ determined Dr. Delfino's medical statements to be "inconsistent with the medical record" and his own treatment notes. Tr. 17. Because the court finds that the ALJ's determination was based on medical evidence in the record, it cannot say that the ALJ "dredged up specious

inconsistencies." Craft, 164 F.3d at 624. Thus, the court finds that the ALJ's evaluation of Dr. Delfino's opinion is complaint with the law and justified by substantial evidence.

Green also argues that "the ALJ credited the opinions of non-examining sources rather than the longitudinal records of the treating source, Dr. Delfino." ECF No. 25 at 2. As noted in the R&R and, the ALJ must consider all medical-source opinion and may accord less weight to the opinion of a treating physician in the presence of "persuasive contrary evidence." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The court has already determined that the ALJ's evaluation of Dr. Delfino's opinion was justified. The ALJ also gave "partial weight" to State agency consultants, noting that "their physical findings of a limited range of light work activity is overall consistent with the ultimate conclusions of this case." Tr. 17. Based on the record, the court finds that the ALJ's assessment of the opinions of the state agency consultants is supported by substantial evidence. As the R&R explained:

> Contrary to [Green]'s assertion, "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." Here, the ALJ considered the findings of the State agency consultants and, for the very reasons cited by [Green], gave their physical findings partial weight, but noted "their physical findings of a limited range of light work activity is overall consistent with the ultimate conclusion in this case."

ECF No. 23 at 16. The ALJ explained that the consultants' opinions are in line with the medical evidence, which "is overall sparse and unremarkable and simply does not support the severity of limitation as alleged by the claimant." Tr. 15. The court agrees with the R&R that the ALJ's assessment of the medical opinion evidence is valid.[2]

---

[2] Green also seems to argue that the ALJ wrongly discredited Green's subjective complaints. The heading of Green's first objection reads, "The [R&R] fails to acknowledge that substantial evidence does not support the [ALJ]'s credibility

### B. The ALJ's Physical RFC Assessment

Green argues that the ALJ failed to consider the combined effect of her impairments in her determination of Green's RFC. The ALJ held that Green "has the residual functional capacity to perform light work as defined in CFR 404.1567(b) and 416.968(b)" with certain postural, reaching, and handling, and fingering limitations. Tr. 14. The court agrees with the R&R that the ALJ's assessment is in line with the law and supported by substantial evidence.

In formulating the RFC, the ALJ is to consider all impairments, even those that are not severe, "and revie[w] 'all relevant medical and other evidence.'" Jackson v. Berryhill, 2017 WL 685603, at *6 (E.D.N.C. Jan. 23, 2017). The ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Monroe v. Colvin, 826 F.3d. 176, 187–88. The RFC must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts such as laboratory findings and non-medical evidence like daily activities and observations. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Additionally, the Fourth Circuit has held that "in evaluating the effect[ ] of various impairments . . . , the [ALJ] must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted).

---

determination." ECF No. 25 at 2. Green fails to expound upon that argument in the body of her objection and fails to otherwise point the court to a specific error of the Magistrate Judge on that front. As such, the court need not address the assertion beyond clear-error review. See Orpiano, 687 F.2d at 47.

The court finds that the ALJ's assessment of Green's RFC, including consideration of the combined effect of Green's impairments, was proper. The ALJ outlined the medical evidence supporting her assessment in a four-page discussion in her decision. Tr. 14–18. As the court has already discussed, the ALJ noted that the physical medical evidence was inconsistent with Green's claimed impairments and that the record "is overall sparse and unremarkable and simply does not support the severity of limitation as alleged by the claimant." Tr. 15. As one example of a more-specific, supportive finding, the ALJ noted:

> An exam showed [Green] to be in no acute distress with normal respiratory findings, normal cardiovascular findings, no peripheral edema, full and symmetric muscle strength noted, normal muscle tone without any atrophy or abnormal movements, normal gait and station, no clubbing, no cyanosis in the bilateral upper and lower extremities, fully oriented, normal speech, no cranialnerve abnormalities, no abnormality of coordination/cerebellum, normal gait and stance, euthymic mood with a normal memory and affect.

Tr. 16.

The ALJ also noted that, contrary to Green's complaints about her impairments, medical evidence from August 2016 and February 2017 provides no indication of problems with her right hand as the physical exam records indicate that "her hands showed no abnormalities." Tr. 15. As the ALJ discussed, medical examinations in 2018 and 2019 also failed to report any problems with Green's right hand. Tr. 17. Further, the ALJ's decision makes clear that she considered Green's alleged impairments in the aggregate, not in isolation.

> After careful consideration of the evidence, I find that [Green]'s medically determinable underlyingimpairments could reasonably be expected to cause the alleged symptoms; however, [Green]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 18 (emphasis added). As such, Green's objection that the ALJ failed to consider the combined effect of Green's impairments in the RFC determination is without merit.

Green also contends that the ALJ's reliance on records indicating a lack of "acute distress" constitutes reversible error because Green need not establish that she is in "acute distress" to be considered disabled. Tr. 17-18. To be sure, the ALJ acknowledged the absence of findings of "acute distress" in the medical record. However, the absence of such findings mark only one example of the many medical findings that evince normal physical strength and thus run contrary to Green's assertions of her limitations. In other words, the absence of "acute distress" findings constitute only a portion of the evidence on which the ALJ relied in her RFC assessment. As such, the court agrees with the R&R that the ALJ's assessment of Green's RFC is consistent with substantial evidence.

**C. ALJ's Mental RFC Assessment**

Green contends that this case should be remanded for an appropriate assessment of Green's mental RFC. Because the court finds no error, it disagrees.

The regulations provide steps that must be applied in evaluating mental impairments and instruct the ALJ to follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. §§ 404.1520a(a); 416.920a(a). Under that technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to substantiate the presence of a medically determinable mental impairment. Id. §§ 404.1520a(b)(1), 416.920a(b)(1). Then, the ALJ rates the claimant's degree of functional limitation resulting from the impairment, id. §§ 404.1520a(b)(2), 416.920a(b)(2), which determines whether the claimant's impairment is severe or not severe, id. §§ 404.1520a(d), 416.920a(d). The ALJ considers four broad functional areas

in order to rate a claimant's degree of functional limitation: the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. <u>Id.</u> §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ also must consider factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." <u>Id.</u> §§ 404.1520a(c)(2); 416.920a(c)(2).

Green alleges that she has multiple mental impairments that limit her ability to perform her prior work, including generalized anxiety disorder, major depressive disorder, and memory problems. Tr. 50–54. The ALJ found that the depressive disorder is non-severe because it does not cause "more than minimal limitation in [Green's] ability to perform basic mental work activities" and is "controlled with prescribed medication." Tr. 13. Accordingly, as to the four areas of mental functioning, the ALJ found:

1. Green has no limitation. Green is able to "shop for groceries . . . indicating abilities to plan for such purchases, make and remember a shopping list. . . understanding financial transactions." Green does household chores . . . "demonstrating significant abilities in understanding the need for such activities . . ." Tr. 13

2. Green has a mild limitation with respect to interacting with others, as she "maintains a relationship with her family and she attends church . . . reports being able to shop, which involves interacting with cashiers and tolerating the presence of others." <u>Id.</u>

3. Green as a mild limitation for concentrating, persisting, or maintaining pace. The ALF found certain activities of daily life demonstrated an "ability to persist with a task despite limitations" and that Green "remembers to take her medication and is a primary caretaker of her teenage daughter." <u>Id.</u>

4. Green has no limitation as to adapting or managing oneself. ALJ relies on her ability to take her prescribed medications, perform personal care, perform household chores, and care for her teenage daughter. Tr. 13-14.

The court finds that the ALJ adequately assessed Green's testimony and medical evidence in the record to determine her mental RFC. As the court discussed above, the record contains sufficient evidence from which the ALJ could determine that Green's mental impairments create only a "mild" limitation in the relevant functional areas. Tr. 14. The ALJ noted that "exams found throughout the record consistently show[ed] the claimant to have a euthymic mood, normal memory, normal speech, normal affect and full orientation." Tr. 13, 15-17 (citing Tr. 354, 356, 358, 374, 377, 379, 391). And, as the ALJ noted, no physician in the record opined that Green had mental work-related functional limitations. As such, the court finds no error in the ALJ's assessment Green's mental residual capacity.[3]

---

[3] Green also objects to the ALJ's reliance on certain daily activities because Green's testimony, as Green reads it, demonstrates that she no longer engages in those activities. Tr. 50-52. But Green's testimony does not suggest that she no longer engages in those activities; instead, it indicates that her ability to engage in them has "changed." Tr. 50. For example, Green still grocery shops, but she must "write down what [she] need[s]" or she will forget. Id.

### IV.  CONCLUSION

Based on the foregoing, the court **ADOPTS** the R&R and **AFFIRMS** the

decision of the Commissioner.

     **AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 23, 2021**
**Charleston, South Carolina**

16